### J. B. Cochran et al. v. Frederick Moerer.

Decided April 12, 1905.

**Boundary—Fact Case.**

　　Evidence in a case involving a question of boundary held to conclusively show the location of the tract in controversy to be at a different place from that found by the jury.

Error from the District Court of Harris.　Tried below before Hon. Norman G. Kittrell.

*G. W. Tharp,* for plaintiffs in error.

*A. R. & W. P. Hamblen,* for defendant in error.

NEILL, Associate Justice.—On April 20, 1901, plaintiffs in error, Jerome B. Cochran and W. J. Settegest, Jr., sued defendant in error, Frederick Moerer, in the form of trespass to try title to recover 43.7 acres of land out of lot number 13 of Trott's subdivision of the west half of the Luke Moore league, situated in Harris County, Texas, on Bray's Bayou, about thirty-two miles southeast of the city of Houston, beginning at a stake on the north bank of Bray's Bayou, it being the southern corner of lots 8 and 13, Trott's subdivision.　Thence north 20 degrees east 986.3 varas along the dividing line of lots 8 and 13 to a stake in south line of the one-half enclosure; thence south 70 degrees east 237½ varas along said enclosure to a stake in west line of the Sierwesen tract; thence south 70 degrees west 854.3 varas to a stake on Bray's Bayou; thence up said bayou with its meanders to the place of beginning.

The defendant, Frederick Moerer, answered by pleas of three, five and ten years statute of limitations, and that the land sued for is a part of lot 8 of the west half of the Luke Moore league, and is bounded as follows:

Beginning on Bray's Bayou at a point which is the southeast corner of lot 8 on the dividing line between lots 8 and 13, in the upper or western half of the Luke Moore league, a sycamore standing . . . varas for said corner, and the hole or root of a pine tree, at one time standing— now gone—are original landmarks of said survey; . . . varas from said bayou, being now the southeast corner of lot 8 and southwest corner of lot 13, on the dividing line; thence north 20 degrees east along a fence 897 varas to corner, a pine 24 inches in diameter, marked "P," on south side; thence north 70 degrees west 250 varas along an old wire

fence to the dividing line of lot 8, between Kolbow and defendants, being Kolbow's northeast corner, a leaning post oak marked "K," and small pin oak marked "K;" thence south 20 degrees west 999 varas along said dividing line and Kolbow's east fence, being middle line of lot 8, to Bray's Bayou; thence down Bray's Bayou with its meanders to the beginning, being the same land sued for by plaintiff, except a strip nine feet wide along said dividing line throughout its entire length, and being the same land to which the plea of limitations applies, and which is described by plaintiffs as part of lot 13.

The case was tried before a jury, who were instructed that, if they found the land sued for by plaintiffs was in lot 13, to return a verdict for plaintiffs, unless they should find for defendant under its plea of limitation of ten years. And "if, on the other hand, the plaintiffs do not prove by a preponderance of evidence that the land sued for is in lot 13, or if they believe the land sued for is, in fact, on lot 8, to so say by their verdict, and find for defendant, and inquire no further. But if they should find that the land claimed by defendant is, in fact, on lot 13, to consider the question of ten years limitation." Then follows an appropriate instruction for the guidance of the jury in considering said plea.

After being so instructed the jury returned the following verdict: "We, the jury, find the land sued for is on lot 8, and find for defendant." Upon this verdict judgment was entered for the defendant, Frederick Moerer, from which judgment this writ of error is prosecuted.

It will be seen, from the statement of the case, that the issue, as presented to us, is one purely of boundary. In determining it we feel only authorized to pass upon the question decided by the jury—i. e., whether the land in controversy is on lot 8 or lot 13 of Trott's subdivision of the west half of the Luke Moore league survey. This excludes from our consideration the defendant's plea of ten years limitation, for such plea was not passed upon by the jury, and the evidence upon it is not so conclusive in favor of defendant as would authorize us to say, as a matter of law, that no other judgment than the one rendered could find support in the facts in view of the evidence upon such plea.

In 1824 the government of Mexico titled one league of land to Luke Moore; it was in the form of a square and surrounded by lands belonging to the government. In 1829 Luke Moore conveyed the western half of said league to Stephen F. Austin, who died in 1837, and James F. Perry was his executor. In 1838 Henry Trott, surveyor, subdivided the west half of the league under the direction of James F. Perry, administrator, and recorded the plat in book "C," p. 276, a copy of which plat is hereto attached in order that the evidence upon the question under consideration may be understood.

The lines between the lots, according to said subdivision, run south 20 degrees west from the north line of the league, and each lot is 500 varas wide. Plaintiffs have a regular chain of title from Perry, Austin's executor, of the western portion of lot 13, and defendant regular chain or title from said executor from the eastern portion of lot 8 of the Trott subdivision of the west half of said league. Indeed, it was by this plat that all the lots in the subdivision were described when sold by Austin's executor. In fact there was never any other authorized or recognized subdivision or plat of the west half of the Luke Moore survey.

It seems, however, that in 1860 one Will Powers, a surveyor, having concluded that Henry Trott had made a mistake in his subdivision by beginning 125 varas too far west, of his own motion undertook to change the lines of the subdivision so as to make it correspond to his idea of the true location of the west line of the survey, thus moving each of the parallel east and west lines—as run by Trott—of the subdivision 125 varas east, thereby throwing everything out of joint, and causing much confusion among the owners of the several lots on the west half of the league. The question, however, between plaintiffs and defendant, as to the location of the land respectively claimed by them, does not depend upon any mistake that may have been made by Trott as to the true location of the west line of the survey, but by the true boundary line, as

run by Trott, between lots 8 and 13 of his subdivision. Whatever legitimate evidence that may be found in the record tending to show this line—i. e., the east line of lot 8 and the west line of lot 13, as run by Trott—will be considered in determining its location.

As will be seen from the plat of the subdivision, each lot is 500 varas wide, and the lines extending from the north to the south are all straight. S. E. Paccard, a civil engineer and surveyor, testified: "I have run nearly all the lines according to Trott's map. The middle line, dividing the league into east and west half, is well defined. The distance from the west line of Luke Moore league to the middle line, according to the Trott subdivision, is 2,502 varas by actual measurement, or five lots, each 500 varas wide. At the northeast corner of lot 12 on the common north end of the dividing line between the east half and west half of the Luke Moore league, there is a gas pipe. It is a well-recognized corner, and is a proper distance according to Trott's subdivision. Where the middle line crosses Bray's Bayou it is marked on the trees, and is known and designated as a line at that point, and recognized as such. The west line of the Luke Moore league, according to the Trott line, is a well-known, marked line. There is an iron pin at the northwest corner of the league, and the west line runs down the center of Scott Street. The Tierwester survey lies west of the Luke Moore league, and the enclosure of Paul Webber, who lives on the Tierwester survey, extends to the Trott line. The Grapevine tract is an old tract, and is enclosed according to the Trott line; passing south along Scott Street, in lot 1, there is the Seneschal place, held by the Trott line; it is an old place. In passing down Scott Street to the southwest corner of the league there is an iron monument to designate that line. On the Trott line we found marked trees. On the north side of the bayou we found an old hickory with a very old mark on it; also a white oak with very old marks on it; and on the south side of the bayou an old hackberry with very old marks, on the Trott line. J. O. Davis and myself made the survey on New Year's day, 1898, when we found those trees. I took J. J. Gillespie, who is now dead, and W. A. Polk out and showed them these marks; the bark had fallen off one white oak, and Mr. Polk brought it into court in another case. I recognized the mark on the bark. The tree from which the bark came stood on the north side on the Trott line, about 300 feet north of the bayou. It was an old white oak tree; it was dead, and the bark peeled off. I surveyed the lines between lots 3, 4, 5 and 6 in 1895 or 1896. There was a marked line about 500 varas east of the west line of the Luke Moore league according to Trott's survey. Between lots 7 and 8, or at a corner where 5, 6, 7 and 8 join, there are marks of improvements that indicate that it is an old line. Between lots 5, 6, 7, 8 and 9 there is a well marked line; between 5 and 6 the southwest corner of Koehler's tract is a well-defined line according to Trott's survey. Passing south between lots 7 and 8 we found an old stump on Bray's Bayou which Mr. Gillespie told me was the original corner, according to the Trott subdivision, between lots 7 and 8. One thousand varas east from the west line of the Luke Moore league is the east line of lot 2 and the west line of lot 10; I have passed south along the line between 2 and 10, and between 4 and 10, and know where the Ingram tract is; the improvements are old, and are made according to

the Trott line lot 10. At the southwest corner of lot 10 is the Williamson tract; it is the old Helmke homestead, and is enclosed by the Trott line. I have surveyed the line between lots 13 and 6. The Link road is on the line between lots 11 and 12, and there are old enclosures on either side of the road. The line between 14 and 15 is known, and there are enclosures along the line—i. e., the Trott line. Rustenbach lives in lot 15, and his enclosures are old, and are by the Trott line. Lot 1 of the east one-half of the Luke Moore league is enclosed to the Trott line. Measuring from the Trott line on the west of the league east across lots 7 and 8 is about 1,000 varas to the west line of the land in controversy. Measuring from the west line of the league the proper distance, according to Trott's survey, the 43 acres in controversy is in lot 13. Measuring from the east line of the west half 1,500 varas goes to the west line of lot 13. Measuring across 14 and 15, it is 1,000 varas to the east line of lot 13. Measuring west from the middle line of the league the proper distance and the land in controversy would be in lot 13. I have made many surveys according to the old marked lines in the timber. The Trott line is an old marked line. The old marked lines are not wrong when they begin at the southwest corner according to the Trott line. The old marked lines and the lines claimed under this controversy are Trott lines. The distance from the northeast corner of the 43 acres claimed by plaintiffs to the Trott line on the west of the league is 1,150 varas. I got my beginning point at the northwest corner of the league, which is a well-known point. It corners with the Tierwester, the Wells and Williams surveys. Then, running east 1,000 varas, you strike the line which divides 8 and 13. Lots 8 and 13 are not in conflict that I know of. The east line of the 43 acres is a recognized Powers line between lot 13 on the east and 6 and 8 on the west. By the Trott marked lines the 43 acres comes exactly as shown on the map, entirely in lot 13."

This testimony of the witness Paccard is corroborated by a number of witnesses and circumstances, and is inconsistent with any other hypothesis than that the land in controversy actually lies in lot 13, as claimed by plaintiffs. Defendant's main witness, J. W. Gillespie, testified: "If the Trott line is the correct line between lots 8 and 13, then the 43 acres, 125 varas of it, would be in 13." The defendant testified that he did not claim any interest in lot 13 of the west half of the Moore league.

As the testimony demonstrates to a mathematical certainty that the land in controversy is not on lot 8, but on lot 13 of the Trott subdivision of the west half of the league, it follows that the verdict is against the evidence, and the judgment for this reason must be reversed.

Under this view of the case it is unnecessary for us to consider the first, second and third assignments of error, which complain of the exclusion of certain testimony offered by plaintiffs. We will say, however, that it seems to us that the testimony was *res inter alios acta,* and inadmissible for that reason.

As it is conclusively shown by the testimony that the land in controversy is in lot number 13 of the Trott subdivision, defendant can only defeat plaintiff's claim to it by his plea of the ten years statute of limitations. Therefore, the judgment of the District Court is reversed, and the cause remanded to be tried solely upon that issue.

*Reversed and remanded.*